STATE OF MAINE                               SUPERIOR COURT
                                             CIVIL ACTION
KENNEBEC, ss.                                DOCKET NO. CV-01-174
                                             SKS- KEN- 1/3/2003

STATE OF MAINE,

        Plaintiff

    v.                                       **DECISION AND ORDER**

THEODORE McLEOD, JR.,                        DONALD L. GARBRECHT
                                             LAW LIBRARY

        Defendant

                                             JAN 9 2003

        This matter came on for trial before the court without a jury on the complaint of

the State of Maine, Office of the Attorney General against defendant Theodore McLeod,

Jr. alleging that he violated the Maine Unfair Trade Practices Act (UTPA), 5 M.R.S.A. §§

205-A-215 (Supp. 2001).[1] After fully considering the unrebutted testimonial and other

evidence presented, the court concludes that the Attorney General is entitled to

judgment, and injunctive and other remedies.

                                        **Facts**

        This case arises from a "get rich quick" scheme, which circulated through

Penobscot County in the Spring of 2001. The scheme was known by a variety of

names, including "The Car Club." Actually, due to the structure of the scheme, there

---

[1] The Attorney General had also originally charged McLeod with a violation of 17 M.R.S.A.
§ 2305, which outlaws pyramid schemes as being lotteries and declares a violation of the section to also
be an unfair trade practice. Section 2305 also provides, "Whoever shall organize or participate in any
such lottery by organizing or inducing membership in any such group or organization shall be guilty of a
misdemeanor, and upon conviction thereof shall be punished by a fine of not more than $5,000 or by
imprisonment for not more than 11 months, or by both." Faced with McLeod's constitutional demand for
a jury trial in light of the clearly criminal nature of the statute, the Attorney General dismissed the
second count of the complaint which included the section 2305 allegation. Nor did the Attorney
General bring other charges under the Criminal Code, e.g., aggravated unlawful gambling, 17-A
M.R.S.A. § 953, or seek an injunction for unlawful gambling under that title, 17-A M.R.S.A. § 958.

1

would be a series of clubs in a stream. Each club is organized as a "car racing team" with a driver, two crew chiefs, four pit crew members, and eight fans. The fans are the lowest level of the club and attain membership by giving $5,000 each to the driver. When the driver has received his $40,000, the team splits into two new teams with the two crew chiefs becoming the drivers, half of the original pit crew moving up to the position of crew chiefs, half the original fans moving up to the pit crew, leaving eight new fan positions to be recruited of the two new teams. The process continues when the new fans all make their $5,000 gifts to the new drivers, and all of the participants move up the ladder again in four new teams. In theory, a fan can move from his position as a $5,000 donor to a $40,000 recipient on the fourth division. As testified to by Professor William Soule (and as further explained in *Pacurib v. Villacruz*, 705 N.Y.S.2d 819, 823 (N.Y. City Civ. Ct. 1999)), this means that for any of the original eight fans to reap the $35,000 profit, at least 120 total fans would have to have given their $5,000 to the "drivers." In other words, there is a constant and constantly increasing demand for new fans in order to make the clubs work. Eventually, and this could happen quite quickly, the club collapses due to the lack of new fans and at this point, according to Professor Soule, the situation is extremely unfair because the last three levels recruited into the clubs cannot recover their losses.

Defendant McLeod was both active and prominent in the organization and promotion of the car clubs. Although his name does not appear as one of the drivers, McLeod hosted recruiting gatherings at his garage and made promotional speeches to gatherings there and elsewhere. According to the witnesses, these speeches included representations that The Car Club was not an illegal pyramid scheme, that an attorney had been retained to guarantee the legality and keep up with rules and regulations, that

2

members could get out of the organization at any time and that McLeod kept a fund to provide refunds to those who wished to leave. Most important, all four of the witnesses testified that they physically gave their $5,000 "gift" as new fans to McLeod himself.

## Discussion

Based on the facts set forth above, it is clear to the court that the car clubs organized in Penobscot County and in which the defendant played an active role, were part of a pyramid scheme. If the State had continued to pursue this matter as a violation of 17 M.R.S.A. § 2305, there would be more than a sufficient factual basis for a fact finder to find beyond a reasonable doubt that this was a pyramid scheme which violated that section of the statute. However, the fact that the State has elected not to proceed criminally through either Title 17 or 17-A, does not foreclose a finding of unfair trade practice under the UTPA. The representations McLeod made during his promotional speeches were themselves untrue and an unfair or deceptive act or practice in the conduct of commerce, which is declared unlawful in 5 M.R.S.A. § 207. McLeod stated that the club was legal and not a prohibited pyramid scheme, when he knew or should have known to the contrary. McLeod represented that an attorney had certified to the legality of the scheme, when no reputable attorney could come to that conclusion. Finally, McLeod's representations that members could get out of the club at any time and be reimbursed their investment from a fund which he had set up was also apparently false since he refused to reimburse any of the four witnesses their investment upon their requests. In summary, the court finds and concludes that defendant McLeod violated the UTPA through his promotional activities for the car clubs. Judgment will be for the plaintiff on count I of the complaint.

3

The State seeks a variety of remedies including a permanent injunction, an accounting, restitution, a civil penalty and its costs of investigation including attorney's fees. The court will issue a permanent injunction by separate order. As authorized in 5 M.R.S.A. § 209, since the court is issuing a permanent injunction, it will exercise its discretion to order defendant McLeod to pay the State the cost of the investigation by the Attorney General and the cost of suit, upon filing by the Attorney General of an affidavit detailing those costs. Other remedies will require further development.

Defendant McLeod argues against orders of restitution or disgorgement pointing out the lack of evidence that he personally gained from any of the car clubs and, even if he had, the law discourages courts from enforcing illegal contracts. As to the second point, none of the cases cited by the defendant involved claims under the UTPA. While the defendant is correct that generally the law will not enforce illegal contracts, that does not mean that the court is prevented from ordering either restitution or disgorgement or both -- which are not enforcement of a contract -- in the context of a UTPA case. Restitution focuses on making whole the victim of some illegal activity, while disgorgement focuses on preventing a wrongdoer from profiting from his wrongdoing without a focus on individual victims. In either case, it is important to have the defendant account for not only the $20,000 which the witnesses have placed in his hands, but all car club funds which have come through his hands. Such an accounting was requested in the original complaint and is within the legal tool box available to the court.

With regard to the Attorney General's request for civil penalties, those penalties are available under 5 M.R.S.A. § 209, but only if the Attorney General proves that the violations of section 207 were intentional and unfair or deceptive. As set forth above,

4

the court makes those findings. However, since the amount of such penalties, if any, may depend in part on the size of any restitution or disgorgement, the court will reserve ruling on these issues until after the accounting has taken place.

For the reasons stated above, the entry will be:

(1) The defendant's oral Motion for Judgment as a Matter of Law is DENIED.

(2) Judgment for the plaintiff on count I.

(3) The defendant is declared to have intentionally committed an unfair or deceptive act or practice in the conduct of commerce. The defendant will be enjoined from such further acts by separate order.

(4) The defendant is ORDERED to file with the court within thirty (30) days a full accounting of the receipt and expenditure of all funds in whatever form which he has received in connection with any of the car clubs. Entries for funds obtained from Mr. Nylund, Mr. Watters, Mr. Spaulding, and Mr. Hanscomb and their disposition should be highlighted.

(5) The court will retain jurisdiction to order further UTPA remedies upon receipt of the defendant's accounting.

(6) The State is awarded the Attorney General's investigation expenses and costs of litigation, including attorney's fees, in an amount to be determined after filing of an affidavit of such costs and fees.

Dated: January 3, 2003

_____
S. Kirk Studstrup

Justice, Superior Court

5

STATE OF MAINE - PLAINTIFF

Attorney for: STATE OF MAINE
LINDA CONTI
OFFICE OF THE ATTORNEY GENERAL
6 STATE HOUSE STATION
AUGUSTA ME 04333-0006


vs
THEODORE MCLEOD JR - DEFENDANT

Attorney for: THEODORE MCLEOD JR
PASQUALE PERRINO
LAW OFFICE OF PJ PERRINO JR
128 STATE STREET
PO BOX 49
AUGUSTA ME 04332

SUPERIOR COURT
KENNEBEC, ss.
Docket No   AUGSC-CV-2001-00174


**DOCKET RECORD**

Filing Document: COMPLAINT                    Minor Case Type: UNFAIR TRADE PRACTICES
Filing Date: 08/23/2001

# Docket Events:

08/23/2001 FILING DOCUMENT - COMPLAINT FILED ON 08/23/2001


08/23/2001 Party(s):  STATE OF MAINE
           ATTORNEY - RETAINED ENTERED ON 08/23/2001
           Plaintiff's Attorney: LINDA CONTI


08/23/2001 Party(s):  STATE OF MAINE
           SUMMONS - CIVIL SUMMONS FILED ON 08/23/2001


08/23/2001 CERTIFY/NOTIFICATION - CASE FILE NOTICE SENT ON 08/23/2001
           MAILED TO ATTY CONTI.


09/06/2001 Party(s):  THEODORE MCLEOD JR
           MOTION - MOTION FOR ENLARGEMENT OF TIME FILED ON 09/06/2001
           TO FILE ANSWER


09/12/2001 Party(s):  STATE OF MAINE
           DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 09/12/2001
           PLAINTIFF STATE OF MAINE'S NOTICE OF DEPOSITION TO THEODORE MCLEOD, JR. SERVED ON PASQUALE
           PERRINO, JR., ESQ. ON 9/6/01.


09/26/2001 Party(s):  THEODORE MCLEOD JR
           RESPONSIVE PLEADING - ANSWER FILED ON 09/26/2001


09/26/2001 ATTORNEY - RETAINED ENTERED ON 09/26/2001
           Defendant's Attorney: PASQUALE PERRINO


09/27/2001 Party(s):  STATE OF MAINE
           DISCOVERY FILING - NOTIFICATION DISCOVERY SERVICE FILED ON 09/26/2001
           PLAINTIFF STATE OF MAINE'S AMENDED NOTICE OF DEPOSITION ON THEODRE MCLEOD SERVED ON P.J.
           PERRINO, ESQ ON 9/21/01.